Please all rise. Here to eat, here to use, Honorable Appellate Court, Second Judicial District, is now back in session. The Honorable Christopher M. Kennedy presiding. Good morning, everyone. Please be seated. Your Honor, the final case on the docket this morning is 2-25-0407. The appeal of the statement of the Honorable Appellate, Dean Tyell, Dean Dixon, defendant Appellee. Arguing on behalf of the Appellate, Ms. Pamela Wallace. Arguing on behalf of the Appellee, Mr. Fletcher, Dean Tyell. All right, Ms. Wells, you may proceed when ready. Please feel free to adjust the microphone if necessary. Good morning, Your Honors. Counsel, may it please the Court. What we hear about is whether post-conviction court erred by granting a new trial by finding that Appellate counsel was ineffective. And the answer to that is the trial court did manifest the error. Counsel was not effective because there was never a motion to continue. There was never a motion to substitute. And the Court specifically set aside a date for Attorney Darsh to appear, and he didn't do so. He stopped a step short of what he needed to do to even preserve the issue of the trial court's denial. Because the trial court, as Attorney Doherty said, the Appellate counsel said, didn't deny anything. So the first thing I want to bring to the Court's attention or discuss is what would it even look like for Attorney Doherty to frame the issue under the circumstances of this case? He didn't have, even if he reviewed the transcripts. So let's talk, you know, let's assume that he had the transcripts. And we agree he did not. He did not. And he did not review them and did not investigate the issue, right? He did not have the transcripts. I cannot say he didn't investigate the issue because he did look at the CLR. And presumably he talked to Attorney Pecorelli because he said he had the colloquy between her and the trial court. So there are ways to investigate other than the transcripts. But even if he had the transcripts and had reviewed them, how would he have framed that issue? Because the trial court didn't deny anything. There was not a motion to continue. And I want to bring to the Court's attention that the post-conviction court order says that the review of the April 19th transcripts would have showed Pecorelli informed the trial court Doherty would need a continuance. That isn't a where in there. That just doesn't exist in that transcript. She said, I have the attorney's card. My client says that he hired him. And he can come in on May 9th. He has the whole date set aside. And that's on page E303 of the transcript. And it is at that point that the judge expresses his frustration. I agree the judge said what he said. And we've all been in front of judges who were frustrated and maybe didn't say things exactly the way they should have. But his last word on the issue, when they went back to it after the motions, was counsel Dosh may need discovery. We're going to set up for May 9th for attorney Dosh to appear. And I'm not inclined. It's very, very clear. I'm not inclined to grant a continuance. It was not an unequivocal denial of the motion to continue because there was no motion to continue. And what did Dosh do on that information? You want to talk about ineffective. He took $20,000 from his client. And he chose not to come to court on the very date that the judge set aside to address the issue that was before the trial. If he wanted to file a motion to continue, he could have. If he wanted to file a motion to substitute, he could have. But he didn't preserve the issue. And I know this Court ---- You know, I agree. I agreed with you initially that he didn't preserve that issue. But how do you distinguish cases that the defense cites that it was the same thing? The lawyer never came in, never came in and asked for continuance. And the Court ruled, you know, the way that the ---- similar to what the Court here ruled, but, you know, not the exact ---- that exact issue. Yeah, but Tucker, Bingham, Adams, all of those cases. I mean, I agree. You would think, well, maybe the judge would have a change of heart when he saw the lawyer come before him. He never came before him. Right. So how is ---- how can we distinguish or use, excuse me, distinguish Bingham, Adams, Tucker that didn't go that extra step? So the difference between those cases are the judge went to trial the very same day of the motion to continue. Did not set a date for counsel to appear. And because of that, they're very distinguishable. And in each of those, in Adams and Bingham, even if you don't follow the IVA decision, distinguishing them and saying, okay, Adams was before Segoviano. Adams cited a case that did not follow Segoviano. And this Court in Ramsey even said Adams didn't follow that an inquiry is not required where defendant is represented by counsel. An independent inquiry of the defendant himself is not required. So in each of those cases that counsel cited, and I refer the Court to page 7, I believe it is, of my reply. I go through each of those cases. In each of those cases there is an actual motion to continue. Whether it ---- that the statute that's required to be in writing supported by affidavit or it was oral. It doesn't matter. We want them to follow the statute, but they didn't. They made an oral motion on the day of trial. Those cases, each one of them says the Court denied a motion to continue. And we have the trial court, I'm sorry, the post-conviction court, specifically saying there was no motion to continue ever filed. Well, now these facts are a little unusual, right? The judge says, I'm not going to grant a continuance. Tells the defendant, tell your lawyer, when you leave the courtroom today you should call this lawyer. Tell this lawyer no matter what we're going to trial in May. It's your obligation to tell them it's set for trial and I told you I would not continue. Word gets back to the Court through Pecorelli that without a guarantee to get a continuance, he's not going to file an appearance. He can't move to continue until he files an appearance, correct? I think he can file a motion to substitute and he can obviously withdraw his appearance if he's not granted a continuance. But seek to withdraw. The Court may or may not grant that. He can address a continuance. He can appear in court and say, I can't enter my appearance unless I'm granted time to continue. But the guarantee, his words of unless I'm guaranteed a continuance, that is exactly what Segoviano says you can't have. You can't have a conditional appearance. And that's what he was trying to do. To what extent, given the language of the Court, which I think a reasonable lawyer would have to recognize as being the intent of the Court, he's not going to get a continuance. And how many days would he have had to prepare for trial if he had filed on May 9th? Well, he sought the May 9th date. To be fair, how often do we have courts that think better of their intemperate words? Not often enough. Well, not often enough, but we do have it. And you can't assume. And that's what Dosch did. He assumed he couldn't get a continuance. And so he just chose, I'm not even going to appear and ask. I'm not going to ask. So, in effect, the trial court didn't deny anything. Judge Sheldon did not deny a motion to continue, did not deny an appearance. And that's what Attorney Pepparelli put in her post-trial motion was that the judge actually denied it. He didn't. Well, I mean, he said, don't bring it. I'm not going to grant it. I mean, doesn't that have the same effect, and doesn't that render such a motion a futile gesture? It doesn't, because in order to preserve an issue, you actually have to make your record. You actually have to appear. You actually have to file your motion. And he chose not to do that. What was Attorney Doherty supposed to argue? How was he supposed to frame it? We don't have any law in the state of Illinois that says that the court can anticipatorily grant or deny a motion to continue. And that's what they're really asking to expand. The Sibabiano cases. To say, oh, counsel can just say, oh, I didn't expect the court to grant my motions, so I didn't have to file one. Absolutely incorrect. Even if the court denied the motion, that's what sets us up for an actual denial or an abuse of discretion argument of the court. That's why there was nothing, there was no way to frame the issue the way that Dosh left it, by not appearing when the trial court specifically set a date for Dosh to appear. And that's what distinguishes it. To go back to Justice Sostek's question, not only was there no motion to continue, in none of those cases, not a single one, did the trial court set a date for counsel to appear. And by Dosh not doing so, he did not stand ready, willing, and able to enter an unconditional appearance. And that is the bright line rule that those cases set. You have to stand ready, willing, and able to enter an unconditional appearance. He just wasn't. He didn't appear on the date that the judge set aside for him to do so. So, the post-conviction court said that he was, that Jory was deficient for not getting the transcript. The problem is, transcripts don't show a single motion to continue. There was no motion to continue, it doesn't change that. It does not change the fact that there was no motion to substitute. And it doesn't change the fact that the judge did not deny either. In fact, it enforces, it reinforces his reasoning because the court specifically set aside that date for counsel to appear. And counsel did not do so because he was not guaranteed a continuance. One he never asked for. He didn't ask for a continuance. And I guess that the trial judge's original words were intemperate. He expressed frustration. But his final word on the issue was, I'm not inclined. And that is far from a bar. There is no per se rule that you have to have transcripts to effectively investigate. I believe I addressed that with Justice Jorgenson earlier. That he did have his, the post-trial motion. He did have the CLR. And he had whatever conversation he had with Attorney Pecorelli. And the transcripts really don't change anything. This court said that it was a preserved issue. I disagree because Joe stopped one step short. He didn't appear on the date that he was supposed to. And he never filed any motion. So it wasn't preserved because even though it was in the motion to, the post-trial motion, two things are required. An objection or in this case a motion that was denied. And the post-trial motion. And we don't have that. We don't have that second step. Furthermore, the trial court really based, the post-conviction court, really based its decision on a lack of inquiry as to why the defendant wanted substitute counsel. Who cares? In this case, it isn't relevant because the judge set a date for counsel to appear. And so there was no inquiry that was required because he already said counsel can come in. Well, doesn't it go to whether or not it's dilatory? Yes. It would go if it's dilatory. Except for counsel never appeared to have that conversation about whether he should be allowed to enter or whether a continuance should be granted. Right. Well, then the defendant's position would be he was told, don't show up unless you're ready to try the case four days after filing or five days after filing. The final word on it was whether he was inclined to do it. Well, he said four times I'm not going to do it. He did. He did. I don't know how much you can hang your head on the last one after that. The problem is we don't have preemptive or anticipatory denials of motions to continue because there was not a motion to continue that was ever filed. Unless there's an unusual circumstance where the court has foreclosed any potential for granting it. He didn't foreclose it, Your Honor. He said it four times. He did. And his final word on the issue was I'm not inclined to grant a continuance. But he didn't foreclose it. And Doj chose not to appear. In fact, he went so far as to set a specific date for counsel to appear. And counsel did not do so. That being said, I asked the court, I understand my time is up, so unless there are other questions, I'll just wrap up. I asked the court to affirm, I'm sorry, to reverse the post-conviction order, reinstate the original convictions and natural life sentence, because after a fair jury trial and direct appeal that was affirmed by this court, the post-conviction order vacating all convictions and granting new trials should be reversed outright. There is no basis in the law or record. The post-conviction court specifically misunderstood or misread that transcript because there was no continuance ever asked for. And so we ask that you reverse. All right. Thank you, counsel. You are up time in rebuttal. Thank you. When you are ready, Mr. Hamill, you may proceed. And please feel free to adjust the microphone if needed. Good morning, Your Honors. I'm counsel. May it please the Court. My name is Patrick Hamill, and I represent the Petitioneropoly Tynell-Dixon. Your Honors, there's a series of questions here that this Court has to address to resolve the, well, first of all, the underlying counsel choice issue and then the issue of appellate counsel's effectiveness. And I want to try to keep these, because they are distinct questions, so I'm going to try to keep these distinct. So the first question is whether Dosch was ready and willing to file an appearance as of April 19, 2012. No, how about as of May? I'm sorry? How about the May date? That was when he was given time to come in and file his appearance, wasn't it? Or May 9th. Either way, was he ready and willing? And that's the question that most of the case law that's cited in the brief addresses. And when you look at that case law, there is a clear rule that emerges, both from the state's cases and from the cases that I cite. Tucker, Green, Bingham, well, actually, with one exception of Adams, but Tucker, Bingham, Green, Washington, and Little are all cases where counsel was retained. And on all those cases, the courts held either that the judge abused his discretion by failing to conduct an inquiry into the motion to continue, or there was an inquiry and the judge abused his discretion by finding that the request was dilatory. Was there a motion to continue in this case, Mr. Hamill? So I believe there was. And I think there's a separate question, I think, though. Because if the purpose of a motion is to communicate to the judge a request that the judge do something, I think it's very clear here that Attorney Pecorarelli made that clear to Judge Shulman, because Judge Shulman certainly understood what was being asked of him. And Your Honor, I cited, I think, four different instances in which Judge Shulman denied a continued. I think that number actually could be as high as eight. And if you look at this transcript, the relevant portion of this April 19th transcript is only five pages long. And in five pages, he manages to say, in no uncertain terms, eight separate times, I'm not going to grant a continuance. This would be a different case if Pecorarelli had said, you know, the defendant hired counsel, I don't know what to do about it, and Judge Shulman said, well, why are you telling me, I don't know why you're asking me this. You know, that would be a different case if there was some confusion here. If you look at trial judges sometimes, I mean, they have a lot of bravado, and they're in the middle of a trial or a court call, and they're all hyped up, and, you know, they might have had 40, 50 cases before. How do we know that the next time this lawyer came before him, he would not have changed his mind? Do we know that? I mean, he says, yeah, I'm not going to give you another continuity, I'm not giving you another continuance. Then he says, I'm not inclined to give another continuance. I mean, from one day to another, can't your mood or your position change? And maybe it would have changed in this case. I suppose it's theoretically possible that if something, you know, if Dozier appeared on May 9th, that maybe, you know, Judge Shulman was in a completely different mood. But I don't – Well, he would have thought better, but maybe he would have gone back and read some case law and thought, gee, I really can't do that. I better turn the Queen Mary around and change my position. How do we know he would not have done that on that date? Aren't we speculating? I think we're still left with – we have to take him at his work on what he did say. Well, if we do that, then what harm would it have been for the attorney to simply appear and make a motion to continue, and then if that motion is denied, withdraw his appearance? I mean, he could have done that, certainly. But I think under the circumstances, he knew it was futile, because Judge Shulman said it was futile over and over and over again. And I do want to address the State's argument with respect to the not inclined comment. Judge LoPiccolo addressed that specifically in his order. It's in paragraph 45 of his order. And he specifically found that that comment did not constitute any softening or tempering of Judge Shulman's position, that Judge Shulman was simply restating his constant position that he was not going to grant a continuance. And Judge LoPiccolo based that on the context, the fact that he was saying over and over again that he was not going to grant a continuance. And I think it's important to just look at the – not the full context, but just the comments that came at the end of the hearing that preceded this not inclined comment. And this is page 298 of the evidence volume. But this is how Judge Shulman approached the topic when he brought it back up at the end of the hearing. He says, now the next thing I want to remind you is that when you leave the courtroom today, you should call this lawyer and you should tell this lawyer that no matter what, we are going to trial in May. If he wants to come in and he feels that he can get up and go and effectively represent you, I welcome him here. Then he gives a paragraph talking about basically saying – Oh, I'm sorry. He gives a paragraph saying, well, you know, Dozier may not choose to file his appearance. And he concludes that paragraph with, it's your obligation to tell him it's set for trial. And I told you I would not continue. And at that point is when Peccarelli asked for the May 9th date with the understanding, an explicit understanding that the May 9th date was not going to change the May 11th pretrial date. I don't know. Because maybe she appears in front of him a lot. Maybe she knew his propensity. And maybe she thought, let's set a May 9th date for this guy to come in. And maybe he would have tempered himself by then. I mean, why would she set a May 9th date? Well, I think it's right here within the court's comments. Judge Sheldon comes back with, he's probably going to need your discovery before May 9th. Why would he need that discovery before May 9th if he's coming in to ask for a continuance? What he's saying all along, he says it throughout. He says, I'm not going to continue. He also says, he's welcome to come in if he's willing to try this case in May. I get it. I get it. Okay. Now, post-trial motion. You're at trial. Something comes in. You don't make an objection. Then you file a post-trial motion and you put that in your post-trial motion. Did you waive it? I guess, but. You did. So, in this case, you filed a post-trial motion, but you never had the man come in to get the continuance. So, you're missing a link there in that post-trial motion. In other words, you never made an objection. Well, that takes us back to the first question of was he willing and able. And that's where Seville Fiano and these other cases come in. And, like I said, there's a clear line in these cases. The line is that, you know, did the defendant represent to the court that counsel was retained? Because in all of those cases that I cited, counsel didn't show up. But if he was retained, that was enough to trigger the inquiry. Right. He was identified. But ready, willing, and able is to file an unconditional appearance, right? Seville Fiano only uses the words ready and willing. Able and unconditional came later in appellate court cases. And many of these cases, many of these cases that I cited are post-Seville Fiano. In fact, some of them are post-this case. But these cases are still following that rule, that line of, you know, was counsel retained? And, you know, I do think the did he deny a continuous question is the closer question. But, again, that still comes down to Judge Sheldon obviously knew he was being asked for a continuance. And really what it comes down to is Pecorelli didn't get a chance to say the words, he needs a continuance, because Judge Sheldon knew it was coming and responded to it. So given that there was a viable issue on appeal, that Judge Sheldon denied, defended his right to counsel of choice, the ultimate question here is was Doherty ineffective, or did Judge LoPiccolo manifest the error when he found that Doherty was ineffective? And appellate counsel's performance does, you know, is evaluated on the same Strickland standard as everybody else's. But when the issue is something like did appellate counsel raise this issue, both prongs of the Strickland analysis really collapse into one question. Was the issue reasonably likely to win relief? If it was, then counsel's clearly unreasonable to not raise it. And if not, then it wasn't. But also if the issue was viable, there's obviously prejudice. And so in this case, there's no strategic reason not to raise this issue. He had 50 pages of brief he could have added on to the issues he had. And on top of that, we know he determined not to raise this issue without the April 19th transcript. And without that, obviously what he testified to is that he thought there needed to be a written continuance or a written appearance. And the case law clearly makes, you know, clearly says that's not the case. Because, you know, even with the state's argument that the oral motions for continuing in, you know, like cases I cite, you know, even if that oral motion did distinguish those cases in this case, that would still not mean that a written one was required. So Doherty was definitely wrong about that. And most importantly, Judge LoPiccolo made all these findings. And all these findings are being reviewed on the manifest error standard. And how can anybody look at these, you know, this transcript and say there was manifest error to conclude that Judge Sheldon was denying a motion to continue in this transcript? You know, that would not be a reasonable holding. So I would ask that this Court — Well, is it objectively unreasonable to raise the issue when, in fact, there was no motion, I mean, to not raise the issue, when there was no actual motion set before the Court? I mean, is it objectively unreasonable for an appellate counsel to conclude there's no there there? I think it is. Because of Green and the other cases that I cite, there doesn't need to be that. You know, you can get around that, I guess, would be how I put it in the office. I mean, so there was a way to make this issue viable without — So the way around it here is your argument that the motion to continue was effectively presented and effectively denied. But it was never presented by the attorney who was going to file the appearance. True. It never needs to be, though. That's, again, you know, it never was in any of these other cases. It's always either the defendant himself or the current attorney in all these cases. You know, these cases that I cite, in my brief, none of them involved a new attorney coming into court and filing a motion to continue. And still, you know, they find error. So this is — this was a viable issue on appeal. It was reasonably likely to result in a new trial. You know, on top of everything else, I should add in my last 30 seconds, this is a — Council of Choice is a structural error issue. This is an issue that could have been raised on appeal despite forfeiture. It could have been raised on appeal despite, you know, whatever, you know, evidence was at trial. And, you know, in a case like this, that's the kind of issue you look for, honestly. And Dory didn't do that here. And Judge O'Pickrell's finding he was ineffective was not manifestly erroneous. And I ask that Your Honors affirm the order. Thank you very much, counsel. All right, Ms. Wells, your rebuttal when you're ready. Yes, counsel, choice is a structural error. But it has to be an actual error. And you have to have clear and obvious error because it would still be required to be raised under plain error. And here, was the judge — was there a plain error in not granting a motion to continue that was never filed? Was there a structural error, any clear and obvious error in not granting a substitution of counsel that was never filed? The answer to that is this court would say, no, you have to file something. We don't practice law by ESP. We don't have judges that say, oh, I think he's going to file a motion to continue. I'm going to deny it anticipatorily. That doesn't happen. You have to file your motion. And because it wasn't filed, it wasn't preserved. And because it wasn't filed, even orally, the April 19th transcript where the judge, post-conviction judge, says she said DOSH would need a continuance. It's not in here. That is manifest error in and of itself. On paragraph 47 of the judge's order, the judge says that there wasn't an inquiry as required by Ramsey and Segoviano. Segoviano does not mention a single thing about inquiry. There's one paragraph, and it doesn't mention inquiry. Ramsey says the inquiry, if he's represented by counsel, is of counsel. The judge is not required to engage in an independent back and forth with the defendant. Pecorelli never filed a motion to continue. She admitted that in her testimony. The judge found that in his findings, the post-conviction judge found that neither Pecorelli nor DOSH made a motion to continue. And so what we're here about is what Justice Kennedy referred to as very unusual circumstances. We have circumstances where the judge was frustrated, blustered, and on April 19th said, I'm not going to grant a continuance. Tell him that. But I'm going to set a date for him to come in. He may need discovery. Counsel, can you take care of that? To the PD. And I'm not inclined to grant a continuance. That was his final word on the issue. And he set a date for Attorney DOSH to come in, and Attorney DOSH chose not to do so. If you want to talk about who was ineffective, it's Attorney DOSH for taking that money and not filing an appearance, or not even bothering to take the minimal step of coming and asking the court on a different day, would you grant me a continuance if I enter my appearance? Or grant me a continuance. You have a motion based upon all these cases where the judge was deprived of the right of counsel. And the problem is, none of these cases were brought to the court's attention. There was no mention of counsel of choice. And all he said is, I've hired an attorney, and he can't be here until May 9th. That's it. And the judge does go off and express his frustration. I don't disagree with that. But you have to look at the entirety. And, yes, Hector, he said all of that. He set a specific date, which is not in any of a single one of the cases cited by counsel. My friend on the other side does not cite a single case where the court actually set a date to have counsel come in and his appearance or file a motion to continue. Not a single one. Therefore, when you look at the totality of Judge Lepiccolo's order, it is within the manifest weight of the evidence, because it specifically misunderstands and miscomprehends what Attorney Pecorelli said. Because she never asked for a continuous trial. We know counsel would have been ready for trial on May 14th. It is an assumption they would have been. Therefore, we're asking that you reverse outright the trial court's decision. And unless there are any other questions. All right. Thank you very much, counsel. Thank you. Appreciate the arguments of counsel. We will take the matter under advisement, issue a ruling in due course, and we will adjourn for the day. All rise.